# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

LARRY KRUEGER,

     Plaintiff,

v.                                       Case No. 19-10596

CITY OF EASTPOINTE,
LIEUTENANT CHILDS,
OTHER UNNAMED EASTPOINTE
POLICE DEPARTMENT OFFICERS,
and JOSEPH MADONIA,

     Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Larry Krueger sues Defendants City of Eastpointe, Lieutenant Childs, Joseph Madonia, and other unnamed Eastpoint Police Department officers. (ECF No. 1.) Plaintiff claims Defendants illegally impounded his vehicle, violating the Fourth Amendment's prohibition on unreasonable seizures, the Due Process Clause of the Fourteenth Amendment, and the Eighth Amendment's bar on excessive fines. (*Id.*) Plaintiff also includes a claim of statutory conversion under Michigan law, Mich. Comp. Laws § 600.2919a(1)(a). (*Id.*)

Plaintiff moves for summary judgment on his Fourteenth Amendment, Eighth Amendment, and statutory conversion claims. (ECF No. 21.) Defendants move for summary judgment on all four counts of Plaintiff's complaint. (ECF No. 28.) The parties having thoroughly briefed the matter and the court finds a hearing unnecessary. E.D.

Mich. L.R. 7.1(f)(2). (ECF Nos. 23, 24, 29, 31, 32.) For the reasons provided below, the court will deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

## I. BACKGROUND

In the early morning of June 6, 2018, Douglas Slayton, Plaintiff's grandson, was driving a 2001 Dodge Neon in Eastpointe, Michigan. (ECF No. 23-5, PageID.273 (Police Report); ECF No. 29, PageID.408, ¶ 11.) The car was titled in Plaintiff's name. (ECF No. 23-11, PageID.306; ECF No. 29, PageID.408, ¶ 3.) Police observed Slayton speeding and swerving in and out of lanes. (ECF No. 23-5, PageID.273; ECF No. 29, PageID.408, ¶ 12.) After conducting a traffic stop, Slayton was given a breathalyser test, which resulted in a .258 blood alcohol level ("BAC") reading, well above Michigan's legal limit of .08 BAC. Mich. Comp. Laws § 257.625(1)(b). (ECF No. 23-5, PageID.273; ECF No. 29, PageID.408, ¶ 13.)

Slayton was arrested for operating a vehicle while intoxicated ("OWI"). (ECF No. 23-5, PageID.273; ECF No. 29, PageID.408, ¶ 14.) The police also discovered Slayton was driving with a suspended license and found marijuana and cocaine in the car. (ECF No. 23-5, PageID.273-74 ("Slayton returned with 3 current suspensions from Roseville and 1 warrant out of 03A district Coldwater for Larceny."); ECF No. 29, PageID.408, ¶ 16.) Slayton was soon charged with OWI, driving with a license suspended, and possession of marijuana and cocaine; he pled guilty on September 5, 2018 to OWI, possession of marijuana, and possession of less than twenty-five grams of cocaine. (ECF No. 23-5, PageID.275; ECF No. 29, PageID.409, ¶¶ 18, 20; ECF No. 23-13, PageID.315.)

As part of Slayton's arrest, the Dodge Neon was towed and impounded. (ECF No. 29, PageID.409, ¶ 21; ECF No. 23-9, PageID.288.) In accordance with the State of Michigan's controlled substance forfeiture law, Slayton was served with and signed a Notice of Seizure and Intent to Forfeit. Mich. Comp. Laws § 333.7521(1) ("The following property is subject to forfeiture . . . a conveyance, including an aircraft, vehicle, or vessel used or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of [a controlled substance]."). (ECF No. 23-2, PageID.240; ECF No. 23-6, PageID.277; ECF No. 29, PageID.409, ¶ 22.) Two days after Slayton's arrest, he was released on bond and informed his grandfather, Plaintiff, that the car was no longer in Slayton's possession as it had been impounded by police. (ECF No. 23-2, PageID.240 (Slayton's testimony: "So [G]randpa . . . [was] aware within days of your arrest that the vehicle had been impounded, correct? Yes.;" "[Mom and Grandpa] were aware that it had been impounded."); ECF No. 23-3, PageID.260 (Plaintiff's testimony: "[S]ometime, not the day of, but sometime around the day of the arrest, you learn [Slayton has] been arrested and the car's been impounded, right? Yes. So early          June[?] . . . Yes."); ECF No. 29, PageID.409, ¶ 23.) Plaintiff and Slayton were living in the same house at the time. (ECF No. 23-2, PageID.240; ECF No. 23-10, PageID.292.)

After hearing of the seizure, Plaintiff went to the police station to ask about the car. (ECF No. 23-3, PageID.261; ECF No. 29, PageID.409, ¶ 24.) The police notified Plaintiff that the car had been impounded and was subject to the Forfeiture Notice provided to Slayton. (ECF No. 23-3, PageID.261; ECF No. 29, PageID.409, ¶ 24.)

Plaintiff hired an attorney, who then contacted Eastpointe Police. Considering that Plaintiff was the registered owner and was not operating the vehicle during the commission of the crimes at issue, Plaintiff's attorney was advised how to file a claim and petition for release of the vehicle. (ECF No. 23-9, PageID.288 (notes taken from the conversion); ECF No. 29, PageID.409, ¶ 29.) The attorney filed a motion seeking return of the Neon in state district court. (ECF No. 23-12 (Motion); ECF No. 29, PageID.409, ¶ 30.) The district court informed counsel that it did not have jurisdiction to return the vehicle, as Michigan's controlled substance forfeiture program vests exclusive jurisdiction for deciding such cases with state circuit courts. (ECF No. 29, PageID.409, ¶¶ 31-32.) Around the same time, Slayton was bound over to circuit court in his criminal case. (ECF No. 23-13, PageID.313-14 (Macomb County Circuit Court docket).) No motion or claim seeking return of the Neon was filed in circuit court. (ECF No. 29, PageID.409, ¶ 33.) With the understanding that Plaintiff intended to claim ownership of the vehicle, the government did not initiate forfeiture proceedings. (*Id.*, ¶ 34.) Instead, the Neon was left in the tow yard, incurring towing and storage fees. (ECF No. 21, PageID.110, ¶ 9; ECF No. 23, PageID.190-91.) Plaintiff now claims he cannot retrieve the vehicle without first paying the towing and storing fees, which he refuses to do. (ECF No. 29, PageID.408, ¶¶ 6, 8; *id.*, PageID.412, ¶ 2.)

## II.  STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility' of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III. DISCUSSION

Plaintiff sues the City of Eastpointe, which operates the police department that seized Plaintiff's vehicle and had it impounded. Plaintiff sues additionally the police officers who arrested Slayton and were involved in the seizure and impounding process. (ECF No. 1, PageID.2, ¶¶ 3-4.) The court will address each of Plaintiff's claims in the order they are presented in his complaint. (ECF No. 1, PageID.7-12.)

## A. Fourth Amendment

"The Fourth Amendment provides in relevant part that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *United States v. Jones*, 565 U.S. 400, 404 (2012) (quoting U.S. Const. amend. IV). Encompassed in the concept of a person's "effects" is an automobile. *Id.* ("It is beyond dispute that a vehicle is an "effect" as that term is used in the Amendment."). The Fourth Amendment covers two general interests, "one involving 'searches,' and the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs where there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 63 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Stated differently, "[t]he Fourth Amendment protects two different interests—the interest in retaining possession of property and the interest in maintaining personal privacy." *United States v. Sanders*, 719 F.2d 882, 886 (6th Cir. 1983).

What the Fourth Amendment does not protect is a return of property *already seized*. "[T]he Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property." *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999). "Once [an] act of taking property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Id.* Thus, while an individual may challenge the legality of the initial seizure of property, she may not recast the holding of property as a continued or recurring seizure. *Langston v. Charter Tp. of Redford*, 623 Fed. App'x 749, 760-61 (6th Cir. 2015) (finding that the

State of Michigan's attempted forfeiture of a watch and money under the Controlled Substances Act when the plaintiff did not contest the legality of the initial seizure did not implicate the Fourth Amendment); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 547 (6th Cir. 2002) (allowing a Fourth Amendment claim when the plaintiff was not alleging a seizure based on the refusal of government officials to return property seized lawfully, but was instead challenging the initial seizure itself); *Fox*, 176 F.3d at 351 (finding that the government's refusal to return a driver's license held four months after it was seized originally in an unchallenged inventory search to be outside the scope of the Fourth Amendment).

Here, Plaintiff does not challenge the initial seizure of his vehicle, and even if he did, he would not succeed. It is uncontested that the only occupant of the Neon, Slayton, was engaged in dangerous and reckless behavior, driving with blood alcohol more than three times the legal blood-alcohol limit. (ECF No. 23-5, PageID.273; ECF No. 29, PageID.408, ¶ 13.) Slayton was speeding, swerving in between lanes, and in fact almost hit a police officer when Slayton passed him on the road. (ECF No. 23-5, PageID.273 (Police Report: "I observed a burgundy Dodge Neon traveling at a high rate of speed pass me and nearly side swipe[d] my patrol car"); ECF No. 29, PageID.408, ¶ 12.) Slayton also had cocaine and marijuana in his possession while driving, on top of driving with a suspended license. (ECF No. 23-5, PageID.273-74 ("Slayton returned with 3 current suspensions from Roseville and 1 warrant out of 03A district Coldwater for Larceny."); ECF No. 29, PageID.408, ¶ 16.)

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been

or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause includes "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). There was substantial evidence that Slayton had committed crimes, including through his erratic driving behaviors, his failed sobriety tests, and the discovery of illegal narcotics. Police had more than "reasonable grounds for belief" that illegal activity had occurred and Slayton's arrest was justified. *Devenpeck*, 543 U.S. at 152; *Padro*, 52 F.3d at 122-23.

After arresting Slayton and having no one else present to take the car, and with Slayton being totally inebriated, no juror could find the police acted unreasonably to ensure the vehicle was not vandalized and was not abandoned on private property or in a public street. *Anderson*, 477 U.S. at 248; *United States v. Jackson*, 682 F.3d 448, 454 (6th Cir. 2012) (quoting *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) ("Discretion as to impoundment is permissible so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.); *United States v. Ballard*, 432 Fed. App'x 553, 557 (6th Cir. 2011) ([T]he discretion to follow police department policy and impound the vehicle [after the driver was arrested] was reasonable for safety and traffic purposes."); *United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994) ("[T]he police lawfully exercised their discretion in deciding to impound the vehicle in the absence of any licensed driver to attend to it, and they followed departmental policy in doing so.") Plaintiff does not oppose this finding and does not claim the tow was unnecessary or in any way a

violation of government guidelines or department policy. *Jackson*, 682 F.3d at 454; *Ballard*, 432 Fed. App'x at 557; *Harvey*, 16 F.3d at 112; *Kimes*, 246 F.3d at 805.

Thus, with the initial seizure of Plaintiff's vehicle uncontested and legal, no basis exists to assert a Fourth Amendment claim over the government's continued possession of the vehicle, whether actual or constructive. Holding the Neon is not a separate and distinct "seizure" subject to its own constitutional scrutiny. *Langston*, 623 Fed. App'x at 760-61; *Farm Labor Org. Comm.*, 308 F.3d at 547; *Fox*, 176 F.3d at 351. While Plaintiff may assert a claim under the Due Process Clause, given that he alleges continued deprivation of his property without due process of law, Plaintiff cannot rely on the Fourth Amendment to escape towing and storage fees. (ECF No. 1, PageID.9-10 (Plaintiff's procedural due process claim).) Plaintiff must comply with the carefully crafted limitations on Due Process claims, which would be easily evaded if Plaintiff could bring his claim under the Fourth Amendment. *Fox*, 176 F.3d at 352 (noting that stretching the Fourth Amendment to cover governmental decisions to continue possession of property "would replace for many cases the well-developed procedural due process analysis that provides the states with the first chance to prevent possible constitutional wrongs with a new, uncertain Fourth Amendment analysis that allows litigants to jump straight to federal court every time a state official refuses to return property that was, at least at one point, lawfully seized or lawfully in the state's possession."). The Fourth Amendment covers seizures, not the sustained possession of property.

There are no genuine disputes of material fact. Fed. R. Civ. P. 56(a). The facts pertaining to the seizure of the vehicle and its continued possession by the government

are uncontested. Plaintiff's Fourth Amendment claims against all Defendants fail as a matter of law. *Id.*

## B. Fourteenth Amendment

Plaintiff's next, and most intuitive, claim is based on the Fourteenth Amendment's Due Process Clause. "The Fourteenth Amendment provides, in part, that 'no State shall deprive any person of life, liberty, or property, without due process of law.'" *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005) (quoting U.S. Const. amend. XIV, § 1). States are generally required to "provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Id.*; *Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 572 (6th Cir. 2008).

Plaintiff fails to support his procedural due process claim. In his motion for summary judgment, Plaintiff cites the uncontroversial contention that property is protected by the Due Process Clause and quotes factors the Supreme Court has considered previously in determining whether adequate process was given, in the context of parole revocation. (ECF No. 21, PageID.120 (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Morrissey v. Brewer*, 408 U.S. 471 (1972)).) Plaintiff provided no analysis applying the basic standards referenced and no analysis of any more detailed precedent. In his response to Defendants' motion for summary judgment, Plaintiff does no better. He cites one case, a 1997 opinion from the Michigan Court of Appeals. (ECF No. 29, PageID.417-19 (quoting *Hollins v. City of Detroit Police Dept.*, 571 N.W.2d 729, 730 (Mich. Ct. App. 1997)).) Consequently, the court is left to guess what binding precedent Plaintiff is using to support his claim. In essence, Plaintiff gives his narrative of the facts, concludes that his constitutional rights have been violated, and asks the

court to construct a winning legal argument for him. That is not the role of a court. After reading Plaintiff's briefs, the court finds it appropriate and justified to award judgment in Defendants' favor based on waiver. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 (6th Cir. 2014).

Nonetheless, the court discerns that Plaintiff most likely contests the adequacy of notice and his opportunity to be heard. The court finds both claims lacking even if they were substantiated with legal analysis.

### i. Notice

Plaintiff spends much of his argument contending that he did not receive the Forfeiture Notice Eastpointe police provided to Slayton upon Slayton's arrest. When considering whether notice complied with due process, the court considers whether the notice is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford[s] them an opportunity to present their objections, and . . . afford[s] a reasonable time for those interested to make their appearance." *Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015) (quoting *Mullane v. Centr. Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950)).

Plaintiff does not contest that the Forfeiture Notice meets this standard. It provides a description of the property seized, includes notice that the government intends to proceed with forfeiture, and details the procedures established through

Michigan's controlled substance forfeiture program an owner must go through to claim the property. (ECF No. 23-6 (Copy of Forfeiture Notice).)

First, the reason Eastpointe police provided Slayton, and not Plaintiff, with the notice was because Slayton was pulled over in the car for drunk driving at the time the car was seized. Upon discovering that the car was listed under Plaintiff's name, the government attempted to contact Plaintiff directly. (ECF No. 23-3, PageID.261.) Plaintiff testified he received a letter "from the police saying the car was impounded but couldn't get ahold [sic] of me at my address at Harrellson." (ECF No. 23-3, PageID.261.) Plaintiff was referring to the fact that he listed as his address 23566 Harrellson Street in Macomb, Michigan on the original paperwork upon obtaining title in November 2016. (ECF No. 23-11, PageID.306 ("Certificate of Title"); ECF No. 28, PageID.340, ¶ 25; ECF No. 29, PageID.409, ¶ 25.) The address was never changed, as Plaintiff testified, despite the fact that Plaintiff moved to a new address. (ECF No. 23-3, PageID.251, 258, 261 (Plaintiff's testimony: "So if somebody wanted to send you a notice regarding your vehicle, they would send    it to the Harrellson address, right? Yeah"; "I wasn't there [at the Harrellson address] almost three years when this occurred"); ECF No. 23-11, PageID.306; ECF No. 28, PageID.340, ¶ 25; ECF No. 29, PageID.409, ¶ 25.)

Plaintiff denies in his brief that he had "not lived at the Harrellson address for more than three years and was aware that he would receive no further notice sent to the registered owner at that address." (ECF No. 28, PageID.340, ¶ 26; ECF No. 29, PageID.409, ¶ 26.) It is unclear whether Plaintiff denies that he had not lived at the Harrellson address for more than three years, that he was aware he would not receive notice, or both. Nonetheless, Plaintiff testified multiple times to moving out of his old

residence at Harrellson Street years before the incident, he admitted "at the time of the impound, the vehicle title reflected Plaintiff's address at . . . Harrellson [sic] Street," and he testified to receiving written notice of the impound at his correct address. (ECF No. 23-3, PageID.251, 258, 261; ECF No. 23-11, PageID.306; ECF No. 28, PageID.340, ¶ 25; ECF No. 29, PageID.409, ¶ 25.)  Plaintiff presents no contradictory evidence. *Matsushita*, 475 U.S. at 587 (requiring the respondent to a summary judgment motion come forward with evidence sufficient to create a genuine issue of fact); *see also Kelsey*, 125 F.3d at 995-96 (requiring parties to develop and present argument in support their case, not to leave it for courts to guess).

Thus, uncontested evidence establishes that the government attempted to contact Plaintiff directly, knowing that he had title to the car and relying on a valid address Plaintiff had provided previously; Plaintiff still complains that he did not receive the Forfeiture Notice directly and promptly. Plaintiff apparently expects the government to have known Plaintiff moved out of his old address. Notice was, ultimately, mailed to his current residence. Under all the circumstances, the court finds this adequate to appraise Plaintiff of the fact of the vehicle's seizure and to afford him the time and opportunity to contest it, which, as will be discussed, Plaintiff did. *Shoemaker*, 795 F.3d at 560.

Even if the government did not provide Plaintiff the forfeiture notice, it is undisputed that Plaintiff received actual notice. It is well-established that a plaintiff claiming a procedural due process violation must establish prejudice. *Mendoza-Garcia v. Barr*, 918 F.3d 498, 508 (6th Cir. 2019) ("[The plaintiff's] procedural due process claim requires a showing of prejudice."); *Shoemaker*, 795 F.3d at 563; *Graham v.*

*Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008) ("[I]n order to prevail on a procedural due process challenge, [the plaintiff] must . . . show prejudice."). To establish prejudice, the plaintiff "must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." *Graham*, 519 F.3d at 549-50 (citing *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241-42 (6th Cir. 2007)).

If an individual did not receive *procedurally* adequate notice but was notified *in fact* that the government intended to deprive the individual of property or a liberty interest, no claim under procedural due process will lie. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (finding that actual notice of an action "more than satisfied [the plaintiff's] due process rights); *Shoemaker*, 795 F.3d at 563 (recognizing that a procedural due process claim will fail when notice would not have affected whether the plaintiff could defend the claim adequately); *United States v. McGovney*, 270 Fed. App'x 386, 387 (6th Cir. 2008) (rejecting a procedural due process claim, noting that the plaintiff had received actual notice); *United States v. Land Contract Vendee's Interest*, 94 F.3d 645 (Table), at *3 (6th Cir. 1996) (denying a procedural due process challenge where the plaintiff had two instances of actual notice). Since an individual with actual notice would be given the opportunity to contest the government action at issue, she would not be able to demonstrate that a "substantially different outcome" would have resulted with proper notice, and thus would fail the prejudice requirement. *Graham*, 519 F.3d at 549-50.

Here, evidence is uncontested that Plaintiff was made aware of the seizure of the vehicle upon, or within days of, Slayton's arrest. Slayton and Plaintiff have both testified

Plaintiff was aware the vehicle had been seized and that it was impounded by Eastpointe Police. (ECF No. 23-2, PageID.240 (Slayton's testimony: "So [G]randpa . . . [was] aware within days of your arrest that the vehicle had been impounded, correct? Yes;" "[Mom and Grandpa] were aware that it had been impounded."); ECF No. 23-3, PageID.260 (Plaintiff's testimony: "[S]ometime, not the day of, but sometime around the day of the arrest, you learn [Slayton has] been arrested and the car's been impounded, right? Yes. So early June[?] . . . Yes.").) Slayton's mother and Plaintiff's daughter, Trisha Shandor has also testified Plaintiff was made aware of the government's actions against the vehicle. (ECF No. 23-10, PageID.302 ("Both you and your father were well aware the vehicle had been seized? Yes. . . . Within two days of the incident, correct? Yes.").) Plaintiff even admits in his briefing that "[u]pon his release (two days after his arrest) Mr. Slayton notified Plaintiff and Trisha Shandor that the Neon had been seized and that he had been served with the [Forfeiture] Notice." (ECF No. 28, PageID.339, ¶ 23; ECF No. 29, PageID.409, ¶ 23.) Further, Plaintiff went to the police station, where he was informed that the vehicle "had been seized and that [it] was being held subject to the Forfeiture Notice" that was provided to Slayton. (ECF No. 23-3, PageID.261; ECF No. 28, PageID.339, ¶ 24; ECF No. 29, PageID.409, ¶ 24.) Of course, Slayton had already informed Plaintiff of that notice. (ECF No. 23-2, PageID.240; ECF No. 23-3, PageID.260; ECF No. 23-10, PageID.302.)

Plaintiff's repeated actual notice is made even more clear by the fact that he hired an attorney to "negotiate" with the Eastpointe police and secure release of the vehicle from impound. (ECF No. 23-10, PageID.302 (Testimony of Trisha Shandor: "You and your Dad had some kind of discussion, and as a result of that discussion, you

concluded that you're not going to pay the costs to get the vehicle back on or about July 31 or there about? Yes. Our decision was to negotiate.").) Plaintiff's attorney contacted Eastpointe police, who again provided notice. (ECF No. 23-9, PageID.288 (notes taken from the conversion); ECF No. 28, PageID.340, ¶ 29; ECF No. 29, PageID.409, ¶ 29.) The attorney was made aware of the vehicle's seizure and the procedure the government intended to follow going forward. (ECF No. 23-9, PageID.288; ECF No. 28, PageID.340, ¶ 29; ECF No. 29, PageID.409, ¶ 29.) Plaintiff's attorney was informed specifically that Plaintiff could post bond on the vehicle and could petition to have the vehicle released. (ECF No. 23-9, PageID.288; ECF No. 28, PageID.340, ¶ 29; ECF No. 29, PageID.409, ¶ 29.)

Explanation of the specific procedure going forward should have been unnecessary after Plaintiff and his attorney had received repeated notice regarding the seizure of the vehicle, its continued possession with the government, and the potential of forfeiture proceedings. Moreover, the entire process was laid out plainly in statute. Mich. Comp. Laws § 333.7523 provides that a person claiming an interest in a vehicle seized may file a written claim to the local government unit or state. Mich. Comp. Laws § 333.7523(1)(c) (2017) (current version at Mich. Comp. Laws § 333.7523(1)(c) (2019)); *see also In re Return of Forfeited Goods*, 452 Mich. 659, 665-68 (1996); *Hollins*, 571 N.W.2d at 730 (describing forfeiture process). The government would then be required to transmit the claim to that attorney general or local prosecuting attorney, who was in turn required to initiate forfeiture proceedings promptly in circuit court if the forfeiture was to move forward. Mich. Comp. Laws § 333.7523(1)(c) (2017) (current version at Mich. Comp. Laws § 333.7523(1)(c) (2019)); Mich. Comp. Laws § 333.7522 (1991).

Thus, Plaintiff was made aware of the fact that his vehicle had been seized within days of the event. Plaintiff understood his ability to hire an attorney—and in fact hired one; he received an accurate explanation of the seizure and forfeiture process. Plaintiff and his attorney had available state statute and caselaw setting out the process needed to recover the vehicle. In addition, the government sent Plaintiff a written notice of the government action against his vehicle, despite Plaintiff moving out of the address on his original vehicle documentation.

The court finds no procedural process violations in the government's notice. Had a procedural violation occurred, moreover, Plaintiff received more than enough actual notice to avoid prejudice. *Shoemaker*, 795 F.3d at 560; *Graham*, 519 F.3d at 549-50.

### ii. Hearing

Plaintiff also appears to contest whether he was given an adequate opportunity to be heard. "Although the formality and procedural requisites for the hearing can vary, 'depending upon the importance of the interests at stake and the nature of the subsequent proceedings' . . . the fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (quoting *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 545 (1985)).

Given the nuanced applications of a hearing requirement, with varying mandates depending on the type of action brought and the property or liberty interest at stake, it is striking that Plaintiff includes no tailored precedent or detailed legal analysis on the question of what level of process was due and when Plaintiff was entitled to it. *Id.* (The nature of a hearing requirement "depend[s] upon the importance of the interest at stake

and the nature of subsequent proceedings"); *see, e.g.*, *Warren v. City of Athens*, 411 F3d at 710 (discussing the specifics of a hearing requirement in the real-property zoning context); *Loudermill*, 470 U.S. at 542-46 (analyzing the extent of a hearing requirement for termination of public employment). Nonetheless, upon an examination of the record, there is no genuine dispute of fact whether Plaintiff had the opportunity to be heard in state circuit court. Fed. R. Civ. P. 56(a).

The facts are undisputed that upon being hired by Plaintiff, his attorney filed a motion for release of the vehicle in the state district court, the court before which Slayton was brought originally on his criminal charges. (ECF No. 23-12 (Motion); ECF No. 29, PageID.409, ¶ 30.) Slayton was soon bound over to Macomb County Circuit Court, which was tasked with presiding over the case through trial. (ECF No. 23-13, PageID.313-14.) Plaintiff admits that he and his attorney were informed and understood that the district court did not have jurisdiction over the vehicle. (ECF No. 28, PageID.341, ¶ 32; ECF No. 29, PageID.409, ¶ 32.) Only the circuit court had jurisdiction over property seized pursuant to Slayton's arrest, as required by Michigan's controlled substance forfeiture program.[1] Mich. Comp. Laws § 333.7511 (describing circuit courts'

---

[1]    Plaintiff includes the odd claim that he could not litigate in circuit court because a clerk at circuit court told his attorney, off the record, that he could not file a petition or motion in circuit court seeking return of the Neon. (ECF No. 21, PageID.117 ("[A motion was] unaccepted by a court clerk who said the circuit court judge does not hear such motions"); ECF No. 29, PageID.430 ("Why did a Circuit Court clerk advise the undersigned attorney not to file the presented motion to contest the seizure?").) As an attorney licensed in the State of Michigan, it was counsel's responsibility to research and assert whatever his client's legal rights may have been, no matter what a clerk's employee may whisper in an off-the-cuff statement. More importantly, the assertion is not supported by a sworn affidavit. Mere assertions included in a summary judgment brief are not admissible evidence and the court will not consider them. Fed. R. Civ. P. 56(c); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[The Federal Rules] leave[] no doubt about the obligation of a summary judgment opponent to make

jurisdiction over "alleged violator[s] of [the controlled substances] article [of Michigan's public health code]" and its jurisdiction to issue injunctions related to such violations); Mich. Comp. Laws § 333.7522 (establishing initial forfeiture processes for the property under "the circuit court['s] . . . jurisdiction"); Mich. Comp. Laws § 600.8303 (delineating district courts' equitable jurisdiction over forfeiture proceedings without inclusion of forfeitures brought under Michigan's controlled substances provisions); *see, e.g.*, *In re Forfeiture of 19203 Albany*, 532 N.W.2d 915, 918 (Mich. Ct. App. 1995) (finding that a circuit court properly had jurisdiction over property seized pursuant to a controlled substances arrest); *In re Forfeiture of $1,159,420*, 486 N.W.2d 326, 330 (Mich. Ct. App. 1992) (In a property seizure and forfeiture pursuant to a controlled substance offense: "[T]he circuit could had jurisdiction to proceed with this case under [Mich. Comp. Laws] § [333.]7522."); *see also Hollins*, 571 N.W.2d at 732 (holding that a circuit court had jurisdiction "where the government gives improper notice to the property's owner and the property is forfeited by administrative proceedings" under Michigan's controlled substance provisions). (ECF No. 23-13, PageID.313-14; ECF No. 28, PageID.341, ¶ 32; ECF No. 29, PageID.409, ¶ 32.)

It is thus a wonder why, up to today, Plaintiff has filed nothing in the court with jurisdiction. (ECF No. 28, PageID.341, ¶ 33; ECF No. 29, PageID.409, ¶ 33.)

The government's position is that they stand willing and able to release the vehicle, so long as it is approved by a court with jurisdiction and Plaintiff is willing to pay towing and storage fees. (ECF No. 28, PageID.341, ¶ 36; *id.*, PageID.365-66.) But that

---

her case with a showing of facts that can be established by evidence that will be admissible at trial.").

is the problem. From the start, Plaintiff, through counsel or otherwise, was informed that he could obtain the vehicle with a bond and paying towing and storage fees. (ECF No. 23-9, PageID.288; ECF No. 23-10, PageID.300, 302 (Trisha Shandor testifying that she and her dad heard "there would be fees to pay and impound fees, and . . . we just thought that was ridiculous;" "You and your Dad had some kind of discussion, and as a result of that discussion, you concluded that you're not going to pay the costs to get the vehicle back on or about July 31 or there about? Yes. Our decision was to negotiate"); ECF No. 28, PageID.340, ¶ 29; ECF No. 29, PageID.409, ¶ 29.) Indeed, Plaintiff did seek to "negotiate" with the government to avoid paying fees. (ECF No. 23-10, PageID.302.) However, Plaintiff's feeling of unfairness from having to pay fees arising from his grandson's drunk driving does not mean he was denied the opportunity to be heard. Whether Eastpointe Police have any obligation to pay Plaintiff's towing and storage fees is an issue Plaintiff could have, and apparently still can, litigate before the circuit court.

Furthermore, there is no evidence Plaintiff has taken the opportunity to file a claim for the vehicle with the City of Eastpointe, as set out in statute and caselaw. Mich. Comp. Laws § 333.7523; *In re Return of Forfeited Goods*, 452 Mich. at 665-68; *Hollins*, 571 N.W.2d at 730. According to Michigan's procedures for property forfeiture in cases of controlled substance crimes, if Plaintiff wishes to submit a claim for the vehicle seized pursuant to a valid arrest for drunk driving and drug possession, Plaintiff must do so "[to] the local unit of government or the state." Mich. Comp. Laws § 333.7523(1)(c). The Eastpointe police stand willing and able to receive directives from the circuit court regarding the Neon, and Plaintiff can pursue his claims in circuit court. There is no

record that Plaintiff availed himself of the alternative procedures, set out explicitly in statute, within the Eastpointe Police Department and local prosecutor's office. Had Plaintiff filed a written claim for the vehicle it seems evident that prosecutors could have withheld initiating forfeiture proceedings and agreed to release the vehicle upon paying towing and storage fees out of court. This possibility is made more likely as the government did not bring a forfeiture action against the vehicle upon hearing (informally) that Plaintiff asserted ownership and might file a claim. (ECF No. 28, PageID.341, ¶ 34; ECF No. 29, PageID.409, ¶ 34.)

Lastly, given 1) Plaintiff filed a motion for return of the vehicle in the wrong court, 2) state circuit court retains jurisdiction over the vehicle, 3) Plaintiff has not yet litigated this issue there, and 4) Plaintiff apparently failed to even file a claim with the City of Eastpointe as required by state statute, Plaintiff's procedural due process claim also fails due to his inability to exhaust state remedies. If a constitutional violation occurs, but "satisfactory state procedures are provided . . . then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson Cty. Pub. School Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). "Plaintiff may not seek relief under [42 U.S.C. §] 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations." *Id.*; *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) ("It is true that the [government defendant] refused to allow plaintiff to be heard because it interpreted the plaintiff's [surrender of an alleged property right] as voluntary, but this refusal does not constitute a due process violation because an adequate state corrective judicial process exists."). So long as the action was a "random or unauthorized act" and not part of "established state procedures,"

which Plaintiff appears to be alleging, Plaintiff must first pursue available avenues in state proceedings, including litigating in circuit court or filing a claim with the City of Eastpointe. *Mitchell v. Fankhauser*, 375 F.3d 477, 483-84 (6th Cir. 2004); *Jefferson*, 360 F.3d at 587-88. (*E.g.*, ECF No. 29, PageID.430 (Plaintiff's response to summary judgment: "the Defendants did not serve any notice of forfeiture on Krueger . . . and still have not done anything to pursue a conclusive forfeiture while the "towing and storage charges" continue to grow.").)

Thus, there are no genuine disputes of material fact regarding Plaintiff's procedural due process claims against all Defendants. Fed. R. Civ. P. 56(a). All facts pertinent to the outcome of this dispute are admitted or lack contradictory evidence, and Plaintiff's claims fail as a matter of law. *Id.*

### C. Eighth Amendment

Plaintiff's next claim is that the government violated the Eighth Amendment's bar on excessive fines by refusing to release Plaintiff's vehicle without first paying towing and storage fees, which have allegedly increased to over $6,000. (ECF No. 29, PageID.414 (Plaintiff asserting the dollar figures of fees owed, notably without any accompanying documentation or affidavits); *id.*, PageID.408, ¶ 6 (Plaintiff admitting that his Eighth Amendment claim is that "[t]he imposition of towing and storage fees constitutes excessive fines").)

"Under the Eighth Amendment, 'excessive bail shall not be required, nor excessive fines imposed." *Timbs v. Indiana*, 139 S.Ct. 682, 687 (2019) (quoting U.S. Const. amend. VIII). The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Id.*

(quoting *United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998)). "A punitive forfeiture [of property] violates the Excessive Fines Clause if it is grossly disproportionate to the gravity of a defendant's offense." *Ross v. Duggan*, 402 F.3d 575, 588 (6th Cir. 2004) (quoting *Bajakajian*, 524 U.S. at 334).

The major problem with Plaintiff's claim is that the uncontested record demonstrates he is not a "defendant" and he is not being punished for an "offense." *Id.* The Eighth Amendment covers those fines that are issued as punishment for illegal behavior. *Bajakajian*, 524 U.S. at 327-28 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)) ("[A]t the time the Cosntitution was adopted, the word fine was understood to mean a payment to a sovereign as punishment for some offense . . . . Forfeitures—payments in kind—are thus 'fines' if they constitute punishment for an offense."); *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (citations removed) (emphasis in original) ("The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as *punishment* for some offense."); *Ross*, 402 F.3d at 588 (emphasis added) ("A *punitive* forfeiture [may] violate[] the Excessive Fines clause.").

By contrast, if a sanction is purely remedial in nature, in that it is "brought to obtain compensation or indemnity" or "compensates [g]overnment for lost revenues," and is not brought about "to deter and to punish," the Excessive Fines Clause does not apply. *Bajakajian*, 524 U.S. at 329 (quoting *Remedial*, Black's Law Dictionary 1293 (6th ed. 1990); *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232 (1972)); *Austin*, 509 U.S. at 622 ("The Clause prohibits only the imposition of "excessive" fines, and a fine that serves purely remedial purposes cannot be considered "excessive" in any

event."); *WCI, Inc. v. Ohio Dept. of Pub. Safety*, 774 Fed. App'x 959, 967 (6th Cir. 2019) ("To determine if the Eighth Amendment applies to the fine that the Commission levied against WCI, we must first consider, as a threshold matter, whether the fines are punitive or remedial in nature.").

Here, the individual punished for illegal acts was Slayton. (ECF No. 23-5, PageID.275; ECF No. 29, PageID.409, ¶¶ 18, 20; ECF No. 23-13, PageID.315.) Plaintiff is pursuing this constitutional claim on the basis that he cannot obtain full possession of his vehicle without first paying towing and storage fees. (ECF No. 29, PageID.408, ¶ 6.) The government concedes that it has no interest in maintaining possession of the vehicle, or in initiating forfeiture proceedings that would vacate Plaintiff's ownership interest, and simply awaits Plaintiff presenting his claim through the proper legal channels (filing a claim with the City of Eastpointe or petitioning Macomb County Circuit Court) and paying the costs incurred by having the vehicle sit at the towing lot for almost two years. (*E.g.*, ECF No. 28, PageID.341, ¶ 36; *id.*, PageID.365-66, 370 ("Plaintiff allowed the Neon to sit without taking any action for its return. Had the vehicle been forfeited, the City would have to pay the same towing and storage fees for release of the vehicle.").) The government obviously does not wish to pay to release Plaintiff's car from the tow yard on Plaintiff's behalf. By maintaining the position that Plaintiff must pay for his own towing and storage fees, the government is declining to expend government funds and to compensate Plaintiff for expenses tied to Plaintiff's property interest in his vehicle. The government does not seek to punish Plaintiff for any act, offense, or malfeasance. Plaintiff has not been issued a citation, let alone charged with a crime.

There is no deterrence or retributive purpose in the government's demand; it just wishes to avoid paying Plaintiff's bills.

The fact that the government initially seized the car, had it towed, and placed it in the impound is immaterial. The car was used in the commission of a reckless drunk driving incident and contained evidence of drug possession. (ECF No. 23-5, PageID.273; ECF No. 29, PageID.338, ¶¶ 13, 16; ECF No. 29, PageID.408, ¶¶ 13, 16.) It was seized legally pursuant to a valid arrest. Further, even if the government were to have initiated a forfeiture proceeding against Slayton—the person to whom the government was directing its effort to penalize for the commission of a serious offense—the forfeiture proceedings would almost certainly be proportional to his crimes and thus not be in violation of the Eighth Amendment. *Ross*, 402 F.3d at 588. (*See also* ECF No. 28, PageID.345, ¶ 54 (Defendants asserting that the vehicle's make and model, with 200,000 miles, is worth around $500 in good condition); ECF No. 29, PageID.412 (Plaintiff admitting the vehicle "has a [fair market value] of less than $110.00").) Thus, the court finds requiring that an owner simply pay expenses incurred in towing and storing a vehicle does not implicate the Eighth Amendment. *Ross*, 402 F.3d at 588.

There are no genuine disputes of material fact and Plaintiff's Eighth Amendment claims against all Defendants fail as a matter of law. Fed. R. Civ. P. 56(a).

### D.  Statutory Conversion

Plaintiff's final claim is based in Michigan's statutory law of conversion. Mich. Comp. Laws § 600.2919a(1)(a). A successful statutory conversion claim requires proof of a "distinct act of dominion wrongfully exerted over another's personal property in

denial or inconsistent with his rights therein" as well as the converter's "own use" of the property. *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 351-52, 335 (2015) (citing Mich. Comp. Laws § 600.2919).

The fatal flaw of this claim is the requirement the conversion take place for the converter's "own use." *Id.* The Michigan Supreme Court has defined "own use" in the context of statutory conversion as "employ[ing] the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id.* at 359.

The Michigan Supreme Court has found conversion for one's "own use" where a warehouse owner moved wine contracted to be stored in a climate-controlled room to a room without climate control. *Id.* ats 341. The court reasoned that the act advanced the warehouse's personal interest by allowing the warehouse to lease out the climate-controlled room, and thereby make more money, or by providing the warehouse negotiating leverage over its contracting party, which would be to the warehouse's commercial advantage. *Id.* at 360-61. By contrast, the Michigan Court of Appeals has found "own use" lacking where an individual did not properly transfer a check, but did not spend the proceeds for the individual's own purposes, and where an insurer sent insurance proceeds to the wrong individual to complete and terminate its contractual obligations, but gained no financial benefit in doing so. *Sutter v. Ocwen Loan Servicing, LLC*, No. 320704, 2016 WL 3003346, at *4 (Mich. Ct. App. May 24, 2016); *Howard v. Nat'l City Mortg.*, No. 323118, 2016 WL 146104, at *8 (Mich. Ct. App. Jan. 12, 2016). Financial, commercial, and personal advancement is central to the inquiry of "own use."

No Defendant here has in any way benefited from Plaintiff's car sitting in a towing lot for years on end. *Aroma Wines & Equip., Inc.*, 497 Mich. at 351-52. Neither the City of Eastpointe, nor any Police Officer named in this lawsuit, in any way commercially benefits or advances their interests in a personal way. The government is not retaining Plaintiff's vehicle to obtain leverage in a contract negotiation and to exploit additional profits, it simply refuses to pay for fees Plaintiff owes. In the government's best-case scenario, Plaintiff pays his fees and retrieves his car—the government breaks even and does not have to pay for Plaintiff's towing and storage fees.[2] Alternatively, Plaintiff does not pay the fees and the car remains with the tow company, with no benefit to the government. The government has not (and is not able to) take personal advantage and drive the car, sell the car, or utilize the impounding of the car to pursue some other valuable opportunity.

Lastly, even if one could construe the government's refusal to not pay Plaintiff's fees as its "own use," it would not be "wrongful." *Aroma Wines & Equip., Inc.*, 497 Mich. at 351-52. Plaintiff's vehicle was legally seized and impounded after it was used to drive three times over the legal blood-alcohol limit. (ECF No. 23-5, PageID.273; ECF No. 29, PageID.408, ¶ 13.) It was also used by the driver to possess illegal narcotics. (ECF No. 23-5, PageID.273-74; ECF No. 29, PageID.408, ¶ 16.) The vehicle was properly

---

[2]    Plaintiff's brief also mentions a $300 "forfeiture fee." (ECF No. 29, PageID.425.) Plaintiff does not explain whether this fee would go toward the towing company's fees and costs, or whether it goes towards offsetting costs incurred by Eastpointe Police in effectuating the seizure and impounding of the vehicle. Given that the government never pursued forfeiture, it is unclear what the basis of the charge is and why it would exist in the first place. Nonetheless, Plaintiff introduces no evidence or affidavits to support his contention. Fed. R. Civ. P. 56(c) (requiring production of evidence at the summary judgment stage).

transferred into the possession of the police and then into the control of the tow yard under the command of the police. *Hoffenblum v. Hoffenblum*, 863 N.W.2d 352, 359 (Mich. Ct. App. 2014) (quoting Prosser & Keeton, The Law of Torts 93-99, § 15 (5th ed.) (reasoning that a defendant "wrongfully acquire[s] possession" when she does so "without legal justification"); *JP Morgan Chase Bank, NA v. Jackson GR, Inc.*, No. 311650, 2014 WL 3529088, at *7 (Mich. Ct. App. July 15, 2014) (finding that a defendant coming into legal possession of property was not "wrongful" under Michigan conversion law).

There are no genuine disputes of material fact and Plaintiff's statutory conversion claims fail as a matter of law. Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

All four of Plaintiff's claims lack genuine disputes of material fact. Fed. R. Civ. P. 56(a). As a matter of law, Plaintiff cannot bring a Fourth Amendment claim for the government's continued possession of Plaintiff's vehicle after a valid seizure. Additionally, Plaintiff cannot assert a procedural due process claim where he received adequate notice, or was not prejudiced, and was given (and still has) the opportunity to be heard through state proceedings. The government's demand that Plaintiff pay towing and storage fees are not punitive actions and thus do not fall within the preview of the Excessive Fines Clause. Lastly, Plaintiff has presented no evidence that the government benefited personally from the impounding of Plaintiff's vehicle or that such actions were wrongful. Plaintiff's Michigan statutory conversion claim also fails. Accordingly,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 21) is

DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment

(ECF No. 28) is GRANTED. Judgement is AWARDED to Defendants on Plaintiff's

Fourth Amendment (Count I), Fourteenth Amendment (Count II), Eighth Amendment

(Count III), and statutory conversion (Count IV) claims.

s/Robert H. Cleland       /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: April 6, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 6, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner       /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-10596.KRUEGER.CrossSummaryJudgment.RMK.RHC.4.docx